YONG KI HONG, et al.,

                       Plaintiffs,

-against-

KBS AMERICA, INC., et al.,

                       Defendants.

**MEMORANDUM & ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

05-CV-1177 (ERK)(KAM)

------------------------------------------------------------------------- X

**DORA L. IRIZARRY, U.S. District Judge:**

Plaintiffs' motion for a temporary restraining order ("TRO") in this case, currently pending before the Hon. Edward R. Korman, Chief U.S.D.J., comes before the undersigned district judge under the following circumstances.[1]

On June 9, 2005, plaintiffs submitted a request for an Order to Show Cause and a TRO seeking to enjoin and restrain defendant KBS from ceasing supply of master tapes to plaintiffs' video rental store and to enjoin and restrain all named defendants from encouraging, requesting, or inducing KBS to refuse to supply such tapes to plaintiffs. See Docket No. 17, Motion for Order to Show Cause and Temporary Restraining Order filed by Yong Ki Hong and Hwan Media, Inc. ("plaintiffs' motion for a TRO"). Based on Judge Korman's understanding that the parties had consented to have the magistrate judge consider and decide the plaintiffs' application for a TRO, on

---

[1] The TRO hearing on July 20, 2005 was recorded on tape. A transcript can be ordered by contacting the court's ESR Department, and by referencing Tape KAM 05/#56, Tic. nos. 00-4088.

June 10, 2005, after considering plaintiffs' papers in support of their motion for a TRO[2] and hearing oral argument from all parties,[3] Magistrate Judge Kiyo A. Matsumoto granted the plaintiffs' request for a TRO. See Docket No. 18, Minute Entry and Order dated June 10, 2005; Docket No. 23, transcript of proceedings. Upon the consent of all parties, that TRO was extended up to and including the date for the preliminary injunction hearing on September 28, 2005.

Subsequently, further review of the court's docket did not reveal whether the parties had consented to have Judge Matsumoto decide the plaintiffs' motion for a TRO. Judge Matsumoto scheduled a telephone conference at approximately 6:30 p.m. on July 20, 2005 to raise this issue with counsel, who had appeared before her earlier that afternoon for a settlement conference. During the telephone conference, the counsel who appeared for the TRO on June 10, 2005 indicated that there was not unanimous consent to having Judge Matsumoto decide the TRO. After counsel could not agree on how to proceed with respect to Judge Matsumoto's June 10, 2005 order, the plaintiffs requested that a district judge hear their application for a TRO. The undersigned, as the district judge assigned to miscellaneous matters, heard the plaintiffs' motion for a TRO because the district judge assigned to this case was unavailable.

After reviewing the parties' submissions as they were originally presented to Judge Matsumoto on June 10, 2005, as well as the transcript of the proceedings held before Judge

---

[2] Defendants had not submitted any papers in opposition to the TRO.

[3] A review of the record reflects that counsel for all parties were present at the June 10, 2005 hearing. At that time, all defendants were represented by Darryl T. Garvin, Esq.

Matsumoto, the undersigned heard oral argument from all parties[4] on plaintiffs' motion. For the reasons and pursuant to the terms set forth below, plaintiffs' motion for a TRO is granted.

## I. DISCUSSION

To obtain a TRO, plaintiffs must demonstrate "(1) that absent such an order, they are likely to suffer irreparable harm; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the [applicant's] favor." Rispler v. Sol Spitz Co., Inc., No. 04 Civ. 1323, 2005 WL 1285781, at *2 (E.D.N.Y.) (brackets in original) (quoting In re Feit & Drexler, Inc. v. Drexler, 760 F.2d 406, 416 (2d Cir. 1985) (internal quotation marks omitted)); see also Fed. R. Civ. P. 65(b). Typically, irreparable harm cannot be established where a party's claimed loss can be adequately remedied by a monetary award. See Rispler, 2005 WL 1285781, at *2 (citations omitted).

As a threshold issue, the parties contest whether the instant application is one for a mandatory or prohibitory injunction. While a prohibitory injunction seeks to maintain the status quo pending a trial on the merits or a hearing on a motion for a preliminary injunction, a mandatory injunction "is said to alter the status quo by commanding some positive act." Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 34 (2d Cir. 1995) (citing SEC v. Unifund SAL, 910 F.2d 1028, 1039 (2d Cir. 1990)). To obtain a mandatory injunction, the movant must demonstrate a greater likelihood

---

[4] In the time since the June 10, 2005 Order, defendants KBS America Inc. and Chang Joon Lee substituted Karl Geercken, Esq. and Torsten M. Kracht, Esq. of the law firm Alston & Bird LLP for their previous counsel, Mr. Garvin. Mr. Garvin now represents defendants Joseph Kong and Spring Video & Gift, Inc. Defendant Yang Joong Kim d/b/a Han Kook Video is represented by Rick Kim, Esq. All counsel were present and were afforded the opportunity to be heard by the court on July 20, 2005.

of success. Id.

The court will apply the standards for issuance of a prohibitory injunction seeking to maintain the status quo for the reasons stated on the record and because it appears that KBS had previously supplied plaintiffs with master tapes, at both their Brooklyn and Fresh Meadows stores. See Docket No. 1, Complaint ¶¶ 22–23, 27; Docket No. 15, Ex. 3, Affidavit of Yong Ki Hong ("Hong Aff.") ¶ 14. The question of whether KBS master tapes were actually supplied to plaintiffs' Brooklyn store or to the Fresh Meadows store is one that is better suited for a preliminary injunction evidentiary hearing or for the discovery phase of this litigation.

**A. Irreparable Harm**

As set forth in the affidavit of plaintiff Yong Ki Hong, plaintiffs are likely to suffer irreparable harm if KBS does not resume supplying plaintiffs with master tapes of Korean language programs. Because it appears that KBS controls over sixty percent of the Korean television programming market, and is one of three suppliers of such programming in New York City, its supply of programming to plaintiffs constitutes a major source of plaintiffs' video rental income. See Hong Aff. ¶¶ 4, 28.

While plaintiffs presented evidence that they have sustained losses of approximately $8,000 to $10,000 per month because they were unable to supply their customers with rentals of Korean language programs (id. ¶¶ 28–29), the extent of future losses are not likely quantifiable given the likely irreparable harm to plaintiffs' goodwill. The Second Circuit has indicated that "irreparable harm exists only where there is a threatened imminent loss that will be very difficult to quantify at trial." Tom Doherty Assocs., 60 F.3d at 38. In this regard, the Second Circuit has been willing to

find irreparable injury where, as here, there is a threatened loss of goodwill because goodwill can be difficult to quantify. See id. at 37–39 (collecting cases).

Here, plaintiffs have demonstrated irreparable injury due to a loss of goodwill to the extent that plaintiffs' customers have indicated not only a preference for KBS programing, but also have threatened to stop patronizing plaintiffs if KBS programing is not offered for rental. Plaintiffs have also demonstrated that their customers have patronized their store because of plaintiffs' lower rental rates for the KBS programming. See Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 908 (2d Cir. 1990) (finding of irreparable harm where plaintiff demonstrated loss of customers and the competitive disadvantage that would result from inability to supply customers with the terminated product); see also Docket No. 15, Ex. 2, Affidavit of So Mi Yoon ¶¶ 4–5, Affidavit of Yun Sook Park ¶¶ 4–5, Affidavit of Han Sun Hahn ¶¶ 2–5 (plaintiffs' customers indicating that they will rent videos from another establishment if plaintiffs do not offer KBS programming for rental). Because plaintiffs' inability to provide customers with Korean language videos from these master tapes has caused and will likely continue to cause plaintiffs a loss of customers and revenue, and because, as a result, plaintiffs will have no choice but to close their business, the court finds that plaintiffs have satisfied their burden of demonstrating irreparable harm for purposes of their motion for a TRO.

**B. Likelihood of Success on the Merits and Sufficiently Serious Questions Going to Merits**

The issuance of a preliminary injunction is expressly authorized in federal antitrust actions between private parties. See 15 U.S.C. § 26; see also Treibwasser & Katz v. American Tel. & Tel. Co., 535 F.2d 1356, 1359 (2d Cir. 1976). Notably, there are two elements essential to a claim under Section 1 of the Sherman Act: (1) a "contract, combination . . . or conspiracy," and (2) the conspiracy worked in "restraint of trade or commerce among the several States." 15 U.S.C. § 1; see also Mathias v. Daily News, L.P., 152 F. Supp. 2d 465, 484 (S.D.N.Y. 2001) (internal citation omitted). Here, plaintiffs have alleged that defendants' activities constitute, among other things, an illegal group boycott and price-fixing.

For purposes of the instant TRO, plaintiffs have presented evidence, in the form of affidavits and exhibits, that there is a likelihood of success on the merits and that there are sufficiently serious questions before the court going to the merits of plaintiffs' claims to make such questions a fair ground for litigation. First, there is evidence before the court indicating that defendants agreed to restrict competition in the Korean language video rental market. See Hong Decl. ¶¶ 24–27 (alleging that defendants engaged in a price-fixing scheme). Second, the court was presented with evidence that defendants' reasons for terminating plaintiffs' ability to purchase master tapes was due at least in part to plaintiffs' refusal to agree to defendants' alleged price-fixing scheme. Id. ¶ 27; see also Docket No. 15, Ex. 3, Transcript of Telephone Conversation between plaintiff and defendant Yang Joong Kim on February 25, 2005, at 3. Third, plaintiffs presented evidence that their refusal to participate in defendants' alleged anti-competitive scheme had an adverse effect on plaintiffs' business (see Hong Decl. ¶ 29), and, moreover, that defendants' agreement affected interstate commerce to the extent that it may have caused customers to pay higher prices for video rentals. See

id. ¶ 22 (plaintiffs charged $.50 less per rental video than required by the terms of the alleged price-fixing agreement).  Notably, "[f]ar more important than the interests of . . . defendants . . . is the public's interest in enforcement of the antitrust laws and in the preservation of competition.  The public interest is not easily outweighed by private interests." U.S. v. Columbia Pictures Indus., Inc., 507 F. Supp. 412, 434 (S.D.N.Y. 1980) (citing United States v. Ingersoll-Rand Co., 320 F.2d 509 (3d Cir. 1963)).  Accordingly, plaintiffs have satisfied their burden of demonstrating a likelihood of success on the merits and sufficiently serious questions going to the merits to make them a fair ground for litigation.

**C. Balance of Hardships**

The balance of hardships and equities tips decidedly in favor of plaintiffs because a denial of the instant TRO will likely cause direct irreparable injury to plaintiffs and may severely limit or frustrate the effectiveness of any order this court may render with respect to plaintiffs' motion for preliminary injunction if plaintiffs' business fails.  Although defendant KBS argues that its copyrights may continue to be infringed by plaintiffs who, as KBS contends, are distributing its rental videos in a manner inconsistent with plaintiffs' licensing rights, KBS and the other defendants have failed to present evidence or argument that they will suffer any tangible harm, economic or otherwise, if a TRO is granted and plaintiffs' ability to purchase KBS master tapes is restored.  The question of the nature and extent of KBS's purported injury is better suited for a preliminary injunction evidentiary hearing or for the discovery phase of this litigation.  Moreover, for purposes of this TRO, the court finds that because plaintiffs will be required to pay KBS the requisite fee for copies of master tapes of the Korean language programs, any indirect hardship to KBS is outweighed

by the real and substantial hardships that plaintiffs will likely suffer as a result of a denial of this TRO.

**D. Security Requirement**

In view of the absence of evidence of any direct harm to defendants, the court, in its discretion, will not require plaintiffs to post security for the issuance of this TRO. Although Federal Rule of Civil Procedure 65(c) provides that "[n]o restraining order . . . shall issue except upon the giving of security by the applicant, in such sum as the court deems proper," courts have held that the phrase "in such sum as the court deems proper" vests the court with "wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm." Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 985 (2d Cir. 1996) (quoting Ferguson v. Tabah, 288 F.2d 665, 675 (2d Cir. 1961) (internal quotation marks omitted)).

## II. CONCLUSION

For the reasons set forth above and on the record of the proceeding on July 20, 2005, plaintiffs' application for a TRO is granted. As discussed and ordered at the hearing, (1) KBS shall make available for purchase by plaintiffs, master tapes from December 2004 until June 10, 2005 at the cost of $125 per week; (2) KBS shall make available for purchase by plaintiffs master tapes from June 10, 2005 going forward at the market cost of $250 per week; (3) defendants are enjoined and restrained from encouraging, requesting, or inducing KBS to refuse to supply programming to plaintiffs. It has been stipulated on the record that this TRO shall remain in effect until the court's scheduled evidentiary hearing on plaintiffs' motion for preliminary injunction on September 28,

2005 at 9:30 a.m., or until such earlier date on which the parties can be heard.

SO ORDERED.

DATED:	Brooklyn, New York
	July 22, 2005

_____/s/_____
DORA L. IRIZARRY
United States District Judge